IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

TYRONE EVERETT PAYNE,              Cause No. CV 11-42-M-DWM-JCL

          Petitioner,

   vs.                              FINDINGS AND RECOMMENDATION
                                  OF U.S. MAGISTRATE JUDGE

WARDEN MARTIN FRINK;[1]
ATTORNEY GENERAL OF
THE STATE OF MONTANA,

         Respondents.

_____

     This petition for writ of habeas corpus under 28 U.S.C. § 2254 is before the

Court on remand from the Ninth Circuit Court of Appeals. Payne is a state prisoner

proceeding pro se.

     The Court of Appeals directed this Court to consider Payne's claim under the

Confrontation Clause and to determine whether another claim is procedurally barred

by an adequate and independent state rule. Those are the issues addressed here.

--------

[1] Warden Frink is substituted for Warden Kirkegard because Payne is now detained at
Crossroads Correctional Center in Shelby, Montana. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).

# I. Background

Payne was convicted by a jury of failing to register as a sex offender, a violation of Mont. Code Ann. § 46-23-507 (2007). On February 10, 2010, he was designated a persistent felony offender and sentenced to serve ten years in prison, with five suspended. Pet. (doc. 1) at 2-3 ¶¶ 1-6; Judgment at 1-2 (doc. 1-1 at 77-78).

Payne appealed, arguing that the State violated Crawford v. Washington, 541 U.S. 36 (2004), when it permitted an officer to testify that she was told Payne was not in compliance with his registration requirements in Connecticut. Payne also claimed the evidence was not sufficient to support his conviction. The Montana Supreme Court rejected his arguments and affirmed his conviction. State v. Payne, 248 P.3d 842, 849 ¶ 44 (Mont. 2011). On March 22, 2011, the court denied rehearing. Order, State v. Payne, No. DA 10-0178 (Mont. Mar. 22, 2011) (doc. 46-7). Payne's conviction became final 90 days later, on June 20, 2011. Gonzalez v. Thaler, __ U.S. __, 132 S. Ct. 641, 653-54 (2012); U.S. Sup. Ct. R. 13(1), (3).

Payne filed his habeas petition in this Court before his conviction was final, on March 7, 2011. Pet. at 13, Pet'r Decl. ¶ C; 28 U.S.C. § 2244(d)(1)(A); Clay v. United States, 537 U.S. 522, 532 (2003).

# II. Claims

Payne contends, first, that his conviction was obtained in violation of the

Confrontation Clause, Pet. (doc. 1) at 5-8, Crawford v. Washington, 541 U.S. 36 (2004); and second, that the evidence was not sufficient to support his conviction, id. at 9-11, Jackson v. Virginia, 443 U.S. 307 (1979). In a post-petition filing, he also alleged that his conviction was obtained in violation of Lambert v. California, 355 U.S. 225 (1957). Although Payne set forth the Lambert claim to support his second claim regarding sufficiency of the evidence, it is appropriate and, given the Court's recommendation on the Jackson claim, will not prejudice Payne to construe it as a freestanding claim for relief. See, e.g., Woods v. Carey, 525 F.3d 886, 890 (9th Cir. 2008).

Thus, although the petition raises only two claims, three are addressed here: a Crawford claim, a Lambert claim, and a Jackson claim.

## III. Analysis

### A. Confrontation Clause

The Montana Supreme Court decided this claim on the merits.

#### 1. The Montana Supreme Court's Decision

Before trial, Payne moved in limine to exclude a document from Connecticut purportedly signed by Payne and concerned in some way with his registration as a sex offender in Connecticut. (Because the document was excluded, this Court does not know what it was.) The State originally objected, then withdrew its objection. The

trial court granted the defense motion in limine and excluded the document. Trial Tr. (doc. 11-1) at 123:7-18.

At trial, instead of relying on the document, the State asked Detective Merifield whether Payne was in compliance with Connecticut's registration requirements. The defense objected, stating that the question "goes to the motion in limine." The trial court heard off-the-record argument at sidebar. Then the detective was allowed to answer. She said that "when [she] checked with the Connecticut registration authorities," she was told that Payne was not in compliance with his registration duties in Connecticut. Trial Tr. at 145:23-146:14.

The Montana Supreme Court found Merifield's testimony was based on what an unidentified declarant in Connecticut told her over the phone while she was investigating Payne's case. "[T]he statement of the Connecticut official during the inquiry . . . was made knowingly to a government official for the purpose of creating evidence, and then presented at trial for the truth of the matter asserted." Payne, 248 P.3d at 847 ¶ 30. The Montana Supreme Court held the admission of this evidence violated the Confrontation Clause. Id. at 848 ¶ 31. The State concedes that Merifield's testimony violated Payne's Sixth Amendment right to confrontation. Answer (doc. 46) at 16-17 ¶ 23.

## 2. Prejudice

### a. The Test

Although it found a federal constitutional violation, the Montana Supreme Court denied relief because it found the error did not prejudice Payne. In doing so, it applied its own harmless-error test. See Payne, 248 P.3d at 848-49 ¶¶ 37-40 (applying State v. Van Kirk, 32 P.3d 735, 745 ¶ 47 (Mont. 2001)). As applied here, that test does not appear to meet the standards set by "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See Delaware v. Van Arsdall, 475 U.S. 673, 681-84 (1986); Arizona v. Fulminante, 499 U.S. 279, 308 (1991); Chapman v. California, 386 U.S. 18, 24 (1967). But a federal habeas court "need not conduct an analysis . . . of whether the state court's harmlessness determination on direct review – which is governed by the 'harmless beyond a reasonable doubt' test set forth in Chapman – was contrary to or an unreasonable application of clearly established federal law." Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (internal citation omitted) (discussing 28 U.S.C. § 2254(d)(1) and Fry v. Pliler, 551 U.S. 112, 119-20 (2007)). That is, when prejudice is the only question, the standards of § 2254(d) need not be met.

The reason for omitting that step is that the "objectively unreasonable" standard of § 2254(d), Williams v. Taylor, 529 U.S. 362, 409 (2000), is, in a sense,

"built in" to the traditional prejudice test in federal habeas proceedings. A federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness." Fry v. Pliler, 551 U.S. 112, 121-22 (2007). If the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict," Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (adopting standard of Kotteakos v. United States, 328 U.S. 750 (1946)), then a state court's finding the same error harmless beyond a reasonable doubt must have been objectively unreasonable, 28 U.S.C. § 2254(d). On the other hand, if the Brecht standard is not met, then the petitioner is not entitled to federal habeas relief regardless of the state court's harmless error analysis. Fry, 551 U.S. at 121-22. Thus, the Brecht test "subsumes" the reasonableness inquiry under 28 U.S.C. § 2254(d). Fry, 551 U.S. at 120.

In sum, therefore, when the state court finds a federal constitutional violation and the State does not challenge its finding, the federal habeas court simply determines whether the constitutional error had a substantial and injurious effect on the verdict.[2] "[W]hen a court is 'in virtual equipoise as to the harmlessness of the

---

[2] If an antecedent determination of "unreasonableness" under § 2254(d)(1) *is* required, see Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam), discussed in Fry, 551 U.S. at 119-20, this Court would hold that it was objectively unreasonable to fail to require the State to prove the

error' under the <u>Brecht</u> standard, the court should 'treat the error . . . as if it affected the verdict[.]'" Thus, the State has the burden of persuasion. <u>Fry</u>, 551 U.S. at 121 n.3 (quoting <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435 (1995)).

The State asserts:

Payne's sole defense was to rely on his ignorance of or mistaken understanding of the law, and that nobody told him he had to register. Whether Payne was in compliance or not in Connecticut, as was erroneously introduced through hearsay, the jury clearly had before it sufficient evidence to find beyond a reasonable doubt that he was not in compliance when he moved to Montana and, therefore, guilty of the offense charged.

Answer at 20 ¶ 24d.

The State is correct. The jury was presented with sufficient evidence, even without the evidence admitted in violation of <u>Crawford</u>, to convict Payne under the

---

<u>Crawford</u> violation harmless beyond a reasonable doubt. The Court would also hold that <u>Chapman</u> and <u>Van Arsdall</u> are applied in an objectively unreasonable manner when their standards are held to be met by the State's showing that the evidence was sufficient, without the unconstitutional testimony, to support conviction. That standard necessarily construes evidence in the light most favorable to the State. Where the Confrontation Clause is violated, the appropriate question is whether, considering the picture presented to the jury by all the evidence, and "assuming that the damaging potential of the cross-examination were fully realized," <u>Van Arsdall</u>, 475 U.S. at 684, the jury could reasonably have resolved the contested issues at trial *against* the State. The inadmissible evidence must be "quantitatively assessed in the context of other evidence presented," <u>Fulminante</u>, 499 U.S. at 308, not excised and set aside. Depending on the circumstances of the case, cross-examination might not only thoroughly refute the point in question but might also refute other points or seriously damage the witness's credibility as to other portions of his or her testimony. Further, inadmissible evidence that is "cumulative" in terms of quantity may also, when placed in context, strongly corroborate other evidence a reasonable juror would not otherwise rely on. That is usually the reason the State offers such evidence.

Of course, where evidence is erroneously admitted, but there is no federal constitutional violation, a state court may apply a standard of prejudice lower or different than <u>Chapman</u>.

instructions it was given. Officer Franke testified that he told Payne he must register. Trial Tr. at 134:1-3, 142:7-16. Nothing in the record of the trial makes it impossible, irrational, or illogical for a reasonable juror to believe Franke said what he said he believed he said. But whether there was sufficient evidence to support the State's case without the Crawford violation is not the question.

The question is whether the Crawford violation had a substantial and injurious effect on the *defense*. In Brecht itself, the Court did not ask whether, after excising the evidence admitted in violation of the Constitution, sufficient evidence to support a guilty verdict remained. It considered all the evidence to determine whether the inadmissible evidence would have been a material factor in persuading a reasonable juror to reject the defense theory, relinquish reasonable doubt, and find the defendant guilty. The Brecht Court said:

> At trial, petitioner admitted shooting Hartman, but claimed it was an accident. The principal question before the jury, therefore, was whether the State met its burden in proving beyond a reasonable doubt that the shooting was intentional. Our inquiry here is whether, in light of the record as a whole, the State's improper use for impeachment purposes of petitioner's post-Miranda silence "had substantial and injurious effect or influence in determining the jury's verdict." We think it clear that it did not.
>
> The State's references to petitioner's post-Miranda silence were infrequent, comprising less than two pages of the 900-page trial transcript in this case. And in view of the State's extensive and permissible references to petitioner's pre-Miranda silence—i.e., his failure to mention anything about the shooting being an accident to the

officer who found him in the ditch, the man who gave him a ride to Winona, or the officers who eventually arrested him—its references to petitioner's post-<u>Miranda</u> silence were, in effect, cumulative. Moreover, the State's evidence of guilt was, if not overwhelming, certainly weighty. The path of the bullet through Mr. Hartman's body was inconsistent with petitioner's testimony that the rifle had discharged as he was falling. The police officers who searched the Hartmans' home found nothing in the downstairs hallway that could have caused petitioner to trip. The rifle was found outside the house (where Hartman was shot), not inside where petitioner claimed it had accidently fired, and there was a live round rammed in the gun's chamber, suggesting that petitioner had tried to fire a second shot. Finally, other circumstantial evidence, including the motive proffered by the State, also pointed to petitioner's guilt.

In light of the foregoing, we conclude that the <u>Doyle</u> error that occurred at petitioner's trial did not "substantial[ly] . . . influence" the jury's verdict.

507 U.S. at 638-39 (internal cross-reference omitted). The evidence presented at Payne's trial is reviewed with this example in mind.

### b. Application

Payne came to Montana in December 2008. He became known to law enforcement in Montana on March 16, 2009, when Officers Slater and Franke stopped him for a traffic violation. Slater dealt principally with Payne's passenger, though he also spoke with Payne to some extent. Franke dealt principally with Payne.

Trial was completed in one day. The evidence consisted of 24 pages of testimony, interlaced with the usual logistical discussions about breaks and so forth; a 50-minute videotape of the traffic stop; and a job application completed by Payne.

Only Franke and a Detective Merifield testified for the State. Payne called his passenger as the sole witness in his own case-in-chief. There was no rebuttal. The jury was instructed that Montana law required the State to prove the following: (1) that Payne was required to register as an offender under Montana law; (2) that he established a residence or was a transient in Missoula County for longer than three business days; (3) that he failed to register; and (4) that he "acted knowingly." Trial Tr. at 156:20-157:5; Mont. Code Ann. §§ 46-23-502(9)(b), (13)(b), -504(1)(c), (d) (2007). The jury was not expressly instructed that the State had to prove Payne knew of the duty to register. Nor was it instructed the State did *not* have to prove that.

The parties stipulated that Payne was required to register in Connecticut[3] and in Montana. Trial Tr. at 126:13-21. Although the duty to register in Montana does not exist unless the residency requirement is met, the stipulation was treated as establishing the first but not the second element of the offense. Id. at 158:12-16. The residency element was established by Payne's representation on the job application that he had worked in Lolo from December 2008 through January 2009. Id. at 158:17-159:6. Detective Merifield testified that Payne was not registered in

---

[3] In the 1990's, Payne was convicted in Connecticut of third degree sexual assault and kidnaping. He was required to register in Montana as a sex offender either if Connecticut required him to register as a sex offender or if the offense he committed was "reasonably equivalent to" a sex offense requiring registration under Montana law. Mont. Code Ann. § 46-23-502(9)(b) (2007).

Montana.  Id. at 145:9-22.  No evidence presented to the jury tended to contradict any of these facts.

Payne challenged only the fourth element.  His theory was that he did not know he was required to register in Montana; more specifically, he relied on testimony that he told the officers who first encountered him that he did not have to register, and he asked the jury to find they did not tell him otherwise.[4]

In response to the habeas petition, the State asserts that Officer Franke gave "uncontradicted testimony . . . that he told Payne he was required to register." Answer at 20 ¶ 24(d).  In fact, not only did Officer Franke arguably contradict himself, but his credibility on this very point was the main thrust of Payne's closing argument.

Just before Franke took the stand, the trial court read to the jury the parties' stipulation that Payne "had a duty to register in Connecticut and had a duty to register in Montana."  Trial Tr. at 126:18-19.  On direct examination, Franke testified as follows:

Q [Marks].  At some point during the traffic stop, did you come to

---

[4] Lambert v. California, 355 U.S. 225 (1957), holds that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process."  Id. at 229.  Although the State, defense counsel, and the trial court are all charged with knowledge of this point of law, it was not discussed.  As a result, the jury was not correctly instructed on the elements of the crime.  Nonetheless, the defense theory was, in essence, a Lambert theory.

> > believe what [sic] the defendant was an offender required to register in Montana?

> A.   I did.

> Q.   How did that come about?

> A.   Dispatch relayed that information over the air when Officer Slater checked Mr. Payne for warrants and/or driver's license.

> . . .

> Q.   When you heard information about Mr. Payne broadcast by dispatch, what did you do?

> A.   I asked Mr. Payne if he was required to register.

> Q.   What did he tell you?

> A.   He told me he was not required to register.

Trial Tr. at 128:9-16, 129:3-8.  Here, Franke did not specify, either for the jury or, apparently, for Payne at the scene of the traffic stop, whether he asked Payne if he was required to register in Montana or in Connecticut.  The testimony continued:

> Q.   Did you arrest the defendant that night for failing to register?

> A.   I did not.

> Q.   Why not?

> A.   I wanted to be able to verify that he, indeed, was required to register and that there wasn't a mistake made.

> Q.   What did you do to look into that?

> A.      I contacted Detective Merifield and asked – she's our expert in that field – and asked her to verify what his status was.

Trial Tr. at 130:15-25. Because Franke and Merifield worked different schedules, a week passed before they conferred. Franke talked to Merifield on March 23, then, on March 24, located and arrested Payne for failing to register in Montana. Id. at 131:1-20.

On cross-examination, defense counsel Daly asked Franke:

> Q.      . . . [Y]ou have seen the videotape of that stop from Officer Slater's car; is that correct?
>
> A.      Yes.
>
> Q.      And you agree with me that one of the things that Officer Slater tells Mr. Payne is that the past is behind him; isn't that true?
>
> A.      I don't know what Officer Slater said.
>
> Q.      And it is your testimony, as I understood it, that you told Mr. Payne that he had a duty to register?
>
> A.      That's correct.

Trial Tr. at 133:19-134:3. The last answer was the first occasion when Franke testified he told Payne he must register. Defense counsel then played Officer Slater's videotape of the traffic stop. Id. at 136:7. Based on Daly's remarks in closing argument, it appears the tape showed that Payne knew he was required to register in Connecticut or at least knew he was registered in Connecticut. See Trial Tr. at

13

165:19-23 (referring to discussion between Payne and officers about "what's going on in Connecticut"). At the conclusion of the videotape, Daly resumed his cross-examination of Franke:

> Q. Would you agree with me that it was clear from the tape, that both you and Officer Slater knew that Mr. Payne had a duty to register *out of Connecticut*?
>
> A. I can't speak for Officer Slater. But yes, I knew he had *to register*.
>
> Q. And now that you heard the tape, would you agree with me that Officer Slater told Mr. Payne to put the past behind him?
>
> A. Again, I can't testify to what Officer Slater says in that.
>
> Q. But you heard the video this morning; is that correct?
>
> A. I did.
>
> Q. Did you hear Officer Slater say that?
>
> A. I heard something similar. There's a lot of distortion.
>
> Q. So you're not sure that he said that?
>
> A. That's correct.

Trial Tr. at 138:13-139:5 (emphasis added).

Daly also elicited Franke's agreement that Officer Slater gave Payne "very specific directions" as to dealing with the traffic ticket and told the passenger who accompanied Payne how to deal with her warrant for Minor in Possession. When

Daly asked Franke whether Slater told Payne "to go register as a sex offender," Franke responded that he "can't tell exactly what he says at times" because "there's a lot of distortion." Id. at 139:6-21.

Daly also sought to undermine Franke's credibility. He pointed out that both Slater and Franke wanted to search the car, which belonged to Payne's cousin, Kevin, because there was a gun case in the back seat.[5] Referring to the videotape, Daly said:

> Q. And you'd agree with me, though, in this long discussion that went on about the gun case, that part of that was carried on between you and Mr. Payne, correct?
>
> A. It was.
>
> Q. And as part of that, you told Mr. Payne that you're not supposed to lie to him; is that correct?
>
> A. I don't know that I said that. And I don't think you could hear me. When I'm talking to Mr. Payne, we're off to the side.
>
> Q. So you didn't hear yourself say that on the video this morning?
>
> A. I didn't.
>
> Q. Okay. And did you also, on the video, say that it was okay for Tyrone to have a gun in that case if that's what, in fact, was in the case?

---

[5] There is no "automobile exception" under Montana law. Compare State v. Elison, 14 P.3d 456, 470-71 ¶ 54 (Mont. 2000), with California v. Acevedo, 500 U.S. 565, 580 (1991). The reason the officers wanted to search does not appear in the trial record. Kevin Payne, however, was also a felon and Franke was familiar with him before he met Petitioner Tyrone Payne at the traffic stop. CON Network, https://app.mt.gov/conweb (accessed Apr. 18, 2013); Pretrial Hr'g (doc. 11-1) at 19:19-20:8, 45:8-11.

A.    No.

Q.    You didn't say that?

A.    I don't believe that's me.

Q.    Because that wouldn't be true, would it?

A.    It would be a federal offense for him to have a firearm.

. . .

Q.    So if you told him it was okay for him to have a gun, that wouldn't be true?

A.    Correct.  But that's not my voice.

Q.    Now, when this whole discussion about the gun case went on, that was basically trying to get Mr. Payne to consent to search; isn't that correct?

A.    I did want to do a consent search on the vehicle.

Q.    And so, if you told him that it was okay for him to have a gun, that would have been trickery on your part; isn't that true?

A.    Correct.

Trial Tr. at 140:7-141:17.

On redirect, the prosecutor asked Franke to choose between his testimony that Payne said he was not required to register and his testimony that he told Payne he must register:

Q [Marks].   Now, at the beginning of Mr. Daly's cross-examination, he

> asked you if you had told Mr. Payne that he had a duty to
> register. Do you remember that?

> A.     I remember him [sic] testifying to that, yeah.

> Q.     And when I asked you on direct what exchange had happened
> between you and Mr. Payne, you told me that you asked him if he
> had registered, and he told you he didn't have to. Which of those
> is accurate?

Trial Tr. at 142:7-14. Franke responded, "I believe I – when I asked Mr. Payne about

the registry status, I did tell him he had a duty to register." Id. at 142:15-16.

But Franke had indeed said on direct that Payne said he was *not* required to

register. Trial Tr. at 129:3-8. Contrary to the prosecutor's framing of the question,

this was not an either/or proposition.[6] A reasonable juror could have believed *both*

that Franke told Payne he must register and that Payne said he was not required to

register. A reasonable juror could also have believed that Payne and Franke were

talking past each other, with Payne saying he was not required to register in Montana

and Franke saying Payne was required to register in Connecticut, or vice versa.

Regardless of the several different interpretations a reasonable juror could have made

of the evidence, it was clear that Franke did not arrest Payne on March 16 for not

being registered in Montana. In sum, a reasonable juror could have believed that

---

[6] If the prosecutor was asking Franke whether the law required Payne to register or whether Payne was correct that he did not have to register, the answer would have been an either/or proposition. But the question would have been inappropriate.

Payne believed he was not required to register in Montana, and Franke was sufficiently unsure that he wanted to verify his belief before making an arrest.

That is the context in which the Confrontation Clause violation occurred. Detective Merifield testified that Franke "advised [her] that he thought Tyrone Payne was possibly a registered sex offender and maybe not registered here in Missoula." She further testified:

> A.   I ran a criminal history on him to determine if he had been convicted of an offense in Connecticut, and contacted the State of Connecticut to determine if that was, in fact, the same person.
>
> Q.   And was it?
>
> A.   Yes.
>
> Q.   Had Mr. Payne, in fact, been registered in Connecticut?
>
> A.   Yes.
>
> Q.   Were you able to determine if he registered when he came to Montana?
>
> A.   According to all of our records . . . he was not registered here.
>
> . . .
>
> Q.   When you checked with Connecticut, was he in compliance with his registration duties there?
>
> A.   No.
>
> Mr. Daly:   Objection, Your Honor; goes to the motion in limine.

The Court:   Counsel, approach the bench.

(Whereupon, a[n unreported] bench conference was had.)

The Court:   The objection is overruled. You may go ahead and answer. Do you remember what the question was?

The Witness:   He asked me if Mr. Payne was compliant in Connecticut with his registration.

Mr. Marks:   Let me phrase the question very specifically Detective. When you checked with the Connecticut registration authorities, was Mr. Payne in compliance as far as they were concerned?

A:   No.

Q.   However, I'm corrected [sic] that there was no warrant for his arrest?

A.   No, not to my knowledge.

Trial Tr. at 144:20-146:17.

Merifield's testimony in violation of <u>Crawford</u> was the first and only evidence that Payne was not properly registered in Connecticut. On this testimony, the State rested.

In his own case-in-chief, Payne called the passenger who was with him at the traffic stop. Daly asked whether she heard "any radio traffic to indicate that Tyrone Payne was a registered sex offender . . . from Connecticut," and she said she did. <u>Id.</u> at 150:5-12. She also testified that she did not hear either officer tell Payne "he had

19

a duty to register as a sex offender in the State of Montana." Id. at 150:19-23. The State followed up by establishing that she "couldn't hear everything" when she was in the back of Slater's vehicle. Id. at 151:6-12.

At the conclusion of the testimony, Daly moved for acquittal on the grounds that the State had not proved the knowledge element, arguing that "[t]his is not a strict liability offense." Trial Tr. at 153:23-25. The trial court denied the motion because "[t]here was testimony from Officer Franke that he told the defendant that he had to register." Id. at 154:8-14.

The jury was instructed, in pertinent part:

> A person acts knowingly with respect to a specific circumstance defined by an offense, when the person is aware of that circumstance.
>
> Purpose and knowledge ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's state of mind, including his purpose and knowledge, from the defendant's acts and from all other facts and circumstances in evidence which indicate his state of mind.

Trial Tr. at 156:12-11; see also id. at 157:6-13 (reasonable doubt instruction); Mont. Code Ann. 45-2-101(35) (2007) (defining "knowingly").

Daly, in the defense closing, relied on Slater's remark on the videotape that Payne should "put the past behind him," emphasizing that Slater knew Payne was "a registered sex offender out of the State of Connecticut." Slater also gave detailed

advice to Payne as to his ticket and to his passenger about her warrant but did not tell Payne he must register as a sex offender in Montana. As to Franke's testimony that he told Payne he must register, Daly asked, "But how credible is Officer Franke? . . . Officer Franke, I submit to you, is the one who says to Mr. Payne, it is okay to have a gun in Montana . . . if that's what you have in that case." Trial Tr. at 163:2, 164:9-11. Daly concluded:

> What does that suggest to you if you're a registered sex offender from Connecticut, when you're stopped by police in Missoula; they tell you they know about what's going on in Connecticut; they say, Tell us about Connecticut; and then he says, "Put the past behind you"?
> Does that tell you you're supposed to go out and register? No. It tells you the opposite; you don't have to register in Montana.
> So I would submit to you that the State has failed to prove Element No. 4, that the defendant acted knowingly. And remember, each one of these elements has to be proven beyond a reasonable doubt.

Trial Tr. at 165:19-166:5.

Understandably, the State argues that Officer Franke gave uncontradicted testimony that he told Payne he must register. But a reasonable juror, given the totality of the evidence, could have found that Franke did not tell Payne he must register. A reasonable juror could have believed instead that, by the time the traffic stop concluded, Payne had told the officers he was not required to register, and the officers found his statement credible enough to believe he might not be in violation of Montana law – particularly when Franke felt he needed to verify Payne was

required to register.  Given only Franke's testimony and the video recording, a reasonable juror could have believed that Payne did not "act knowingly" in failing to register.

Revealing to the jury that Payne was not currently "complian[t] in Connecticut with his registration," Trial Tr. at 146:9, was the only additional evidence on the knowledge element that was presented to the jury.  Had Payne been given what the Constitution demanded – an opportunity to cross-examine someone competent to testify about his compliance in Connecticut – Payne might have shown that this information was inaccurate, that there was more to it, or that his lack of compliance in Connecticut had a reasonable explanation.  But he did not have that opportunity.

When one complies with the law at one point and then, with no explanation, ceases to comply, he tends to appear to be knowingly evading the law.  It appears that Payne indicated on the video that he was aware of a requirement, past or present, that he register in Connecticut.  See Trial Tr. at 165:21-23.  Even a juror who believed that Payne genuinely did not know whether he must register *in Montana* – and, after all, Franke and Slater were not sure – could nonetheless figure that someone who knew he had to be registered somewhere had better make sure he *is* registered *somewhere*.

The Crawford violation showed Payne was not registered *anywhere*.[7] Thus, Merifield's testimony undermined the credibility of Payne's assertion at the traffic stop that he was not required to register. It made him instead look like someone who would say he was not required to register no matter what he knew about his requirement to register.

Thus, the Confrontation Clause violation showed that Payne did not comply even with a registration requirement he knew about. Merifield's inadmissible testimony made it easier for the jury to resolve the only issue the defense contested: whether Payne knew or reasonably should have known he must register and, therefore, whether he "acted knowingly." Without Merifield's testimony, a reasonable juror could have found the State's proof insufficient to overcome reasonable doubt. With it, that same juror was substantially more likely to relinquish reasonable doubt. The Crawford violation had a substantial and injurious effect on the jury's verdict.[8] Payne is entitled to federal habeas relief.

---

[7] In fact, taking into account all the evidence and the instructions given to the jury, a reasonable juror could have believed that maintaining registration in one place would be effective in all places where registration is required – that is, that Payne could register in Montana *by* maintaining his registration in Connecticut. A driver's license and insurance coverage in one state, for instance, is good in other states as well. Why would a juror assume that sex offender registration is different?

[8] The Crawford violation harmed the defense in other ways as well. When the violation occurred, it was too late for defense counsel to reconsider strategic choices such as stipulating that Payne had a duty to register in Connecticut and asking Franke whether he told Payne he must

### B. **Lambert** Claim

Payne's first assertion of a <u>Lambert</u> claim occurred in his tenth post-petition filing in this Court.  *See* Supp. Request (doc. 18) at 1-2; *see also* Notice of Supp. Authority (doc. 19) at 1-2.  He did not assert this claim at all in the state courts. Initially, this Court concluded that dismissal was appropriate because Payne still had time to file a petition for postconviction relief in the trial court, and he could, in one way or another, have brought the <u>Lambert</u> claim.  Payne did not, however, pursue postconviction relief.  His time for doing so expired on June 20, 2012, Mont. Code Ann. § 46-21-102(1)(b), nearly a year after dismissal was recommended by this Court.

The <u>Lambert</u> claim could have been raised on direct appeal.  Mont. Code Ann. §§ 46-20-104(1) (contemporaneous objection rule); <u>State v. Norman</u>, 244 P.3d 737, 742 ¶ 17 (Mont. 2010) (summarizing common-law plain error doctrine).  It was not. "[G]rounds for relief that were or could reasonably have been raised on direct appeal

---

register.  After all, if Franke had said no, that response would tend to support the defense theory. (In a pretrial hearing, Franke did not testify that he told Payne he had a duty to register.  Pretrial Hr'g Tr. (doc. 11-1) at 9:19-11:12, 18:9-19:3.)  When Franke said yes, counsel sought to impeach him with the recorded statement telling Payne an untruth, that is, that he could have a gun.  Had counsel known the State would present evidence about Payne's status in Connecticut, he might have made different strategic choices, sought out additional evidence, or even advised Payne differently about his choice to go to trial.  But Daly could not have anticipated that the State would be permitted to introduce evidence in violation of the Confrontation Clause, and he had no responsibility to prepare the defense case with that possibility in mind.

may not be raised, considered, or decided" in a postconviction proceeding. Mont. Code Ann. § 46-21-105(2). To whatever extent a state court might rule that Payne could *not* "reasonably have . . . raised" the Lambert claim on direct appeal due to counsel's error, the Lambert claim could be raised in postconviction proceedings. Alternatively, even if the Lambert claim had been held barred under § 105, Payne could have filed a postconviction petition asserting ineffective assistance of appellate counsel as a claim for relief, with Lambert as the predicate claim. But Payne did not file a postconviction petition at all. Consequently, the Lambert claim is deemed exhausted, because no procedural avenue remains open to Payne to present in state court either that claim or a derivative claim of ineffective assistance. Mem. at 3 para. 2, Payne No. 11-35758 (stating that Lambert claim must be viewed as exhausted); see also Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982); Franklin v. Johnson, 290 F.3d 1223, 1231 (9th Cir. 2002).

The Court of Appeals remanded Payne's Lambert claim for a determination of the adequacy and independence of the bars that prevent Payne from returning to state court now. Mem. at 3 para. 1, Payne, No. 11-35758. The controlling Montana statutes and common law are "adequate" if they were "firmly established and regularly followed," Collier v. Baer, 408 F.3d 1279, 1284 (9th Cir. 2005) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)), that is, "clear, consistently applied,

and well-established," id., at the time Payne was required to comply with them. Rules that are generally adequate can be deemed inadequate if the state court applies them in a manner that is "exorbitant," Lee v. Kemna, 534 U.S. 362, 376 (2002), or "unrealistic," Reece v. Georgia, 350 U.S. 85, 89 (1955); see also Hoffman v. Arave, 236 F.3d 523, 531 (9th Cir. 2001). The Court is required to consider both published and unpublished decisions of state courts in determining the adequacy of a state procedural bar. Powell v. Lambert, 357 F.3d 871, 879 (9th Cir. 2004). A state procedural requirement is "independent" if its application is not intertwined with an explicit or implicit holding of federal law. Coleman v. Thompson, 501 U.S. 722, 734-35 (1991); Ake v. Oklahoma, 470 U.S. 68, 74-75 (1985).

The Court is not aware of any inconsistency in the availability of direct appeal or postconviction proceedings in Montana. The controlling statutes have been on the books since at least 1997; the common-law doctrine of plain error has been available in its present form since at least 1996, see State v. Finley, 915 P.2d 208, 215 (Mont. 1996) (Nelson, J.), cited in Norman, 244 P.3d at 742 ¶ 17. Contemporaneous objection rules are generally adequate to support state judgments. Wainwright v. Sykes, 433 U.S. 72, 88-90 (1977). Whether the Montana Supreme Court would have exercised plain error review in Payne's case need not be determined, because it was clear at the time of Payne's direct appeal that he could have asked it to do so. There

is nothing exorbitant or unrealistic about expecting Payne to raise his claims in the same manner and at the same time as everyone else. The bars in question merely define the appropriate steps to take for relief and prescribe the time for filing. They have nothing to do with the law or facts supporting a particular claim, so any application of them would necessarily be independent of federal law. The contemporaneous objection rule and the availability of direct appeal, plain error review, and postconviction proceedings are all adequate and independent state grounds on which a state court could predicate a judgment.[9]

Even where "a state prisoner has defaulted his federal claim[] in state court pursuant to an independent and adequate state procedural rule," a federal court might still hear the claim on the merits if the petitioner can excuse his procedural default by showing either cause and prejudice or a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. But the Court of Appeals has already held that Payne cannot excuse his procedural default. Mem. at 2 paras. 1-2, Payne, No. 11-35758. The Lambert

---

[9] In the prior proceedings, the Court did not consider the adequacy or independence of the procedural bar because its understanding was that deeming a claim exhausted obviates the need to do so. "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray v. Netherland, 518 U.S. 152, 162 (1996); see also Smith v. Baldwin, 510 F.3d 1127, 1137-39 (9th Cir. 2007) (en banc). To put it another way, if the state statutes were weakly established or inconsistently applied, it would not be clear whether Payne could return to state court or not, and his Lambert claim could not be deemed exhausted. See, e.g., Johnson v. Lewis, 929 F.2d 460, 463-64 (9th Cir. 1991) (holding that if a petitioner may return to state court, he must do so).

27

claim must be dismissed with prejudice because it is procedurally defaulted and the default is not excused.

## C. <u>Jackson</u> Claim

On direct appeal to the Montana Supreme Court, Payne claimed the State failed to prove beyond a reasonable doubt that he "knowingly" failed to register as a sex offender. Although the Fourteenth Amendment's Due Process Clause always requires that evidence be sufficient to support a verdict, a claim that evidence was not sufficient does not, for federal habeas purposes, apprise a state court that the appellant invokes or relies on federal rights. If the nature of the claim were enough, the Supreme Court would not require habeas petitioners to "describe . . . the federal legal theory on which his claim is based." <u>Davis v. Silva</u>, 511 F.3d 1005, 1009 (9th Cir. 2008). But the Court does impose that requirement in order to give the state court a "*fair* opportunity" to address the claim under federal law. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999) (emphasis in original).

Payne's briefs on direct appeal relied exclusively on state law. He did not cite to a federal case or a federal source of law, nor did he label his claim "federal." <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004); Appellant Br. (doc. 46-1) at 7-11; Reply

Br. (doc. 46-3) at 6-10.[10]  Citation to a state case might be sufficient to alert a state court that federal rights are at issue, <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc), but the cases Payne cited do not "analyz[e] a federal constitutional issue," <u>id.</u>  <u>See</u> Reply Br. at 7 (citing <u>State v. Gratzer</u>, 682 P.2d 141 (Mont. 1984) (determining quantum and allocation of burden of proof as to mitigation under Mont. Code Ann. § 45-5-103)); Appellant Br. at 8 (citing <u>State v. Giant</u>, 37 P.3d 49 (Mont. 2001) (surveying history of enactment of Federal and Montana Rules of Evidence to decide issue under state law)); <u>State v. LaMere</u>, 67 P.3d 192 (Mont. 2003) (discussing merit of motion for judgment of acquittal based on State's failure to prove mitigation under Mont. Code Ann. § 45-5-103)); <u>id.</u> at 9, 10 (citing <u>State v. Ommundson</u>, 194 P.3d 672 (Mont. 2008), and <u>State v. Swann</u>, 160 P.3d 511 (Mont. 2007) (deciding whether evidence presented by State met the elements)); <u>id.</u> at 11 (citing <u>State v. Taylor</u>, 153 P. 275 (Mont. 1915) (Butte)).

Although Payne claimed, on direct appeal, that the evidence was not sufficient to support the conviction, he did not "describe . . . the federal legal theory on which his claim is based."[11]  <u>Davis v. Silva</u>, 511 F.3d 1005, 1009 (9th Cir. 2008).

---

[10]  Page numbers refer to the brief's pagination, not the page numbers in the Court's electronic filing system, because Payne does not have access to the electronic filing system.

[11]  In fact, even Payne's federal petition did not refer to a federal basis for this claim.  *See* Pet. at 9-11.  Because pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and because there plainly is a federal constitutional right to sufficient evidence

Consequently, the claim was not exhausted on direct appeal. For the same reasons the <u>Lambert</u> claim is barred in state court, deemed exhausted, and procedurally defaulted, so is Payne's claim that the evidence was not sufficient to support the conviction under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

## IV. Remedy

Payne is entitled to relief on his <u>Crawford</u> claim. His conviction must be vacated. The next question is whether he may be retried or whether dismissal of the charge "with prejudice," Pet. at 13, is the appropriate remedy.

Generally, a new trial is barred by the Double Jeopardy Clause if the petitioner obtains relief against the conviction on the grounds that the State failed to introduce evidence sufficient to support the conviction. <u>Burks v. United States</u>, 437 U.S. 1, 11 (1978). But when another trial error is the basis for relief, a new trial is barred only if *all* the evidence presented at trial – including any inadmissible evidence – was insufficient to support the conviction. <u>Lockhart v. Nelson</u>, 488 U.S. 33, 34, 39-42 (1988); <u>Burks</u>, 347 U.S. at 15. Further, even where, as here, the jury was not instructed on an element of the offense, <u>Nelson</u> controls, and retrial is the appropriate remedy. <u>See, e.g.</u>, <u>United States v. Cote</u>, 51 F.3d 178, 182-83 (9th Cir. 1995).

---

to support a conviction, *e.g.*, *Jackson v. Virginia*, 443 U.S. 307 (1979), his petition sufficed to raise a federal issue. *See also* Pet. at 9 ¶ 3 (stating *Jackson* test).

Thus, the question is whether all the evidence presented at Payne's trial was sufficient to support a conviction under the instructions the jury was given. Evidence is not sufficient to support a conviction if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; see also In re Winship, 397 U.S. 358, 364 (1970) (federal Constitution requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged."). The evidence must be considered in the light most favorable to the prosecution. Jackson, 443 U.S. at 319. "A reasonable doubt . . . is one . . . which arises from the evidence or lack of evidence." Id. at 317 & n.9 (quoting Johnson v. Louisiana, 406 U.S. 356, 360 (1972)) (internal quotation marks omitted). Whether the evidence is sufficient to support a particular element beyond a reasonable doubt "must be gauged in the light of applicable law defining the element." Id. at 324.

The Court has already determined the evidence was sufficient. See supra at 8. First, Franke testified that he told Payne he had a duty to register. Although a reasonable juror might have disbelieved Franke, nothing in the record would make it impossible, irrational, or illogical for a reasonable juror to believe him. And, after Franke told Payne he had a duty to register, Payne had a week to find out whether he must register and, if so, to register. Second, the State introduced evidence that Payne was registered in Connecticut at some point. Third, the State also introduced

31

(inadmissible) evidence that Payne was no longer in compliance with Connecticut's registration requirements.

Accordingly, under <u>Nelson</u> and following the example of <u>Cote</u>, the appropriate remedy for the <u>Crawford</u> violation is a new trial, not dismissal of the charge with prejudice.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Lambright v. Stewart</u>, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

Although the <u>Lambert</u> claim makes a substantial showing that Payne was deprived of a constitutional right, <u>see, e.g.</u>, <u>Bartlett v. Alameida</u>, 366 F.3d 1020, 1023-24 (9th Cir. 2003) (per curiam), the procedural ruling is not debatable. The <u>Lambert</u> claim could have been raised on direct appeal or in postconviction proceedings. Despite ample time to do so, Payne did not file a petition for

postconviction relief, choosing instead to proceed in federal court. The <u>Lambert</u> claim must be deemed exhausted. The claim is therefore barred under <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996), and on adequate and independent state grounds. As the Court of Appeals previously ruled, Payne has not excused his procedural default. Reasonable jurists could find no basis to disagree with dismissal with prejudice of the <u>Lambert</u> claim. For the same reasons, the <u>Jackson</u> claim is also procedurally defaulted, the default unexcused, and the claim must be dismissed with prejudice.

This leaves the question of remedy for the <u>Crawford</u> violation. Under <u>Nelson</u>, it is a new trial, not dismissal of the charge, because the State presented sufficient evidence to support the conviction.

The State does not require a certificate of appealability to appeal a ruling that the <u>Crawford</u> violation prejudiced Payne or that Payne is entitled to a new trial. Fed. R. App. P. 22(b)(3).

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. Payne's petition (doc. 1) should be CONDITIONALLY GRANTED as to the <u>Crawford</u> claim. The <u>Lambert</u> claim and the <u>Jackson</u> claim should be

DISMISSED WITH PREJUDICE.

2.  A certificate of appealability should be DENIED as to the <u>Lambert</u> and <u>Jackson</u> claims.

3.  The judgment entered in Missoula County Cause No. DC-09-174 on February 10, 2010, should be VACATED.

4.  The State should be given sixty (60) days to renew proceedings against Payne in the trial court and to file a Notice stating that it has done so.  If the State does not timely file notice of the renewal of proceedings in the trial court, the District Court should order that Payne is unconditionally released from all custody based on the vacated conviction and may not be retried.

5.  The Clerk should be directed to enter judgment in favor of Payne and against Respondents on the <u>Crawford</u> claim and as set forth above.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  If any party files objections, the party must itemize each factual finding to which objection is made and identify the evidence in the record it relies on to contradict that finding; and it must itemize

each recommendation to which objection is made and set forth the authority relied on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude a party from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Payne must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 23rd day of April, 2013.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge